UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-20443-CR-HUCK

UNITED STATES OF AMERICA,

vs.

HECTOR RODRIGUEZ-ACEVEDO,

    Defendant
_____/

## DEFENDANT HECTOR RODRIGUEZ'S MOTION FOR DOWNWARD DEPARTURE OR VARIANCE

DEFENDANT, HECTOR RODRIGUEZ-ACEVEDO, through his undersigned counsel, moves for a downward departure pursuant to United States Sentencing Guidelines Sections 5K2.0(a) and 5K2.20. Defendant has previously objected to the application of Section 3A1.4. This Motion is to provide a basis within the advisory guideline scheme to fashion a proportionate and fair sentence consistent with the provisions of U.S.C. § 3553(b) by granting either a downward departure or a variance, as the Court may deem appropriate. In the event the Court agrees with the Defendant's guideline objection and applies U.S.S.G. § 2M5.3, the Defendant concedes that this motion is unnecessary to consider.

Section 5K2.0 permits the Court to depart from the applicable guideline range if the Court finds mitigating circumstances not adequately taken into consideration by the Sentencing Commission in formulating the guidelines in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2). The Defendant has provided the Government and the probation officer with voluminous documents setting forth mitigating circumstances that show this case to be an exceptional case. The Defendant is hopeful that the defense

position will receive support when this case comes before the Court for sentencing on June 15, 2007.

The Defendant was born and raised in Santa Marta, Colombia. The government of Colombia has been fighting a communist insurgency since 1949. Various communist groups consolidated in 1962 as the "Southern Tolima Block," becoming the Revolutionary Armed Forces of Colombia (FARC) in 1966. The FARC has now been waging a war to topple the government of Colombia for more than 40 years.

The Colombian government was never able to exert its control of the country much beyond Bogotá, the Capital. In 1968, a decree known as the Law of 48, allowed the creation of self-defense militias by private citizens to protect their property and lives, and receive aid and guidance from the Defense Ministry and the Colombian Military. Military manuals, through the mid-1980s provided procedures to organize civilians against leftist guerillas. In practice, the Colombian government never followed through with funding and regulating the militias.

Private militia initiatives emerged by legitimate landowners, owners of emerald mines, and by drug traffickers like Pablo Escobar. Escobar, and others like him, bought land from impoverished traditional landowners at low cost in areas where the guerilla presence, influence and constant kidnapping made land ownership untenable. These drug lords, after communist insurgents kidnapped Marta Nieves Ochoa, of the infamous Ochoa drug family, formed a paramilitary force known as MAS (Muerte a Secuestradores, or Death to Kidnappers).

The predecessor to the AUC was formed by three brothers, Ernesto, Fidel, and Carlos Castaño Gill, to seek revenge against the FARC for the kidnapping and murder of

2

their father, a cattle rancher. As they grew and merged with paramilitaries in other districts, their founding goals deteriorated and the AUC used drug trafficking to fund itself and enrich its commanders. Ernesto Castaño was killed in a FARC ambush. The two other Castaño brothers are missing and presumed dead. Carlos Castaño's wife and children were granted political asylum in the United States. AUC rivals are thought to have murdered her husband.

In part, due to their zeal to control the best drug routes, the best coca growing regions and the best land, the AUC scored amazing battlefield successes against the FARC and more than reversed the advances made by the FARC in their 1996-1998 offensive. Subsequently, the AUC has agreed to demobilize its forces. The Defendant believed that the weapons negotiated for in this case were to be held in reserve in the event the Colombian Military failed to deploy sufficient forces in Santa Marta and the FARC re-entered the district. Fortunately, the Colombian Army has deployed well-trained and equipped forces.

The Defendant's family developed and affinity for the AUC when they assisted in pressuring kidnappers to release the Defendant's sister instead of selling her to the FARC to hold for ransom, in September of 2002. The Defendant was later contacted by political operatives with the AUC and encouraged to run for City Council. He was elected in 2004 on a platform to improve the economic well-being of the citizens and support for the peace process. The Defendant threw himself into his work. He led efforts to initiate a manual (as opposed to airborne) eradication of coca programs, which employed hundreds of campesinos, creating much needed employment. It also prevented herbicide spraying which did great damage to legitimate food crops.

3

The Defendant convinced the Gases del Caribe Company to open service centers in several small towns in the district. Previously, these families had no natural gas service which is essential to these families since they lack electric service. The families who received service are predominantly Afro-Colombian, who had traditionally been shut out of the political process. The Defendant served their community with his best efforts and they provided a letter as thanks signed by fifteen heads of families. He also helped set up a rural clinic which was built, in part with funds from the AUC.

The Defendant assisted in developing the tourism potential of his District and organized twenty coffee plantations to form "Haciendas del Café." He promoted the plant to the National Secretary of Tourism and Culture and to the Governor. As a result, a color brochure was funded promoting the area of the Sierra Nevada as a tourist destination. The Governor of the Magdalena Department also recognized his efforts in developing programs to help in cattle ranching, exotic flower cultivation and ecotourism, thus diverting the population from coca growing.

The Co-Defendant in this case has received amnesty and the Colombian government has refused his extradition. Defendant Jose Galves Albaraccin was a colonel in the Colombian Armed Forces. He has demobilized his 1200 paramilitary fighters under the Colombian Peace Plan endorsed by President Uribe. As he saw that the Colombian Army was taking control in his District, he completed the demobilization of his forces on February 3, 2006. The ability of the Colombian Army to provide security in the District made the weapons negotiated in this case unnecessary. That transaction, although negotiated, was never concluded.

4

All this is to provide some background for the Court to understand the social and political environment in the Defendant's society and to provide some context for his charged conduct.

Hector Rodriguez made his bargain with the devil to jumpstart his political career. The AUC called in its favor on this case. The Defendant used his position to do good, but his bargain came back to destroy him. His family land is now in forfeiture proceedings and his name is ruined.

This is an accurate picture of the Defendant now before the Court. It is supported by documents provided to the Government and to Probation by the defense.

The Defendant never intended to support terror or to confront the Colombian State. He is a college graduate with a degree in Architecture. He has always wanted to be a productive member of society. His crime is so different in character from those anticipated by U.S.S.G. Section 3A1.4 that his sentence should be reduced, by way of a departure as aberrant behavior, or by a variance.

As reprehensible as the AUC may be, they were the lesser of two evils, compared to the FARC. The FARC considers any landowner, police officer and owner of a business with hired labor to be their enemy. The AUC would charge for protection but in a more orderly, less chaotic manner. The authority of the central government was absent in the District of Magdalena. Young, productive and energetic people were left without any clearly correct choice. This Defendant chose to align with a terribly flawed paramilitary organization. This is his crime in context.

6

WHEREFORE, Defendant respectfully moves the Court for a downward departure, or alternatively, for a variance.

Respectfully submitted,

s/Martin L. Roth
Martin L. Roth, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was E- filed with the Clerk of Court and the U.S. Attorney's Office, AUSA Cristina Maxwell using CM/ECF this 12th day of June, 2007.

> MARTIN L. ROTH, P.A.
> One East Broward Boulevard
> Suite 700
> Fort Lauderdale, FL 33301
> Tele: (954) 745-7697
> Fax: (954) 745-7698
>
>
> By: ___s/Martin L. Roth___
>   Martin L. Roth, Esquire
>   FL Bar No: 265004